And our last case for the day is Wells Fargo Bank, N.A. v. Expeditors International of Washington, Inc. And counsel may approach. Thank you.  You may approach. Good morning. May it please the Court. My name is Stephen Willey, and I represent Expeditors International of Washington, Inc. I'd like to reserve five minutes, please. At the outset, I'd like to address the Court's June 27, 2025, directive that the parties be prepared to discuss the impact on this appeal of this Court's prior decision in the case Expeditors v. Cadena, No. 24-108, which was issued on March 5, 2025, and then the District Court's subsequent order for the defendant here to answer or otherwise respond to the Second Amendment complaint in that other case. And the short answer is that this Court's opinion in the Expeditors v. Cadena appeal supports what we argued in our briefing here. Number one, the District Court erred in lifting the stay in this interpleader action before the parallel Expeditors v. Cadena matter had been resolved. The District Court's ruling, which is reviewed under an abuse of discretion standard, seemed to be based on the perceived finality of the Expeditors v. Cadena matter based on that Court's Rule 12 motion. But the Court's order here in March reversed the District Court, and the Expeditors' direct action is now back in the District Court and pending. Let me ask you, what are the allegations in the Second Amendment complaint in the direct action that we just reversed and sent back? With respect to what, Your Honor, there are a whole lot of allegations. What are the allegations in that complaint? What is the complaint about? Yeah. The complaint alleges that Mr. Cadena is a former financial officer of Expeditors Mexico, that in the course of his work there, he embezzled substantial funds in conspiracy with others. He was subsequently terminated. He sought to exercise stock options. Those have been denied. There is a claim for declaratory judgment with respect to the rights regarding the stock options. There's also a claim for breach of contract with respect to stock option agreements and the employee stock purchase. What does that have to do with the money that Wells Fargo had? A fair question, Your Honor. We don't know what the money in the Wells Fargo account is from. What we know is that Wells Fargo pled that there had been hundreds of thousands of dollars transferred from a Mexican bank to Wells Fargo here in the U.S. in 2023, but there was a dispute about the money, and it put it into interpleader action. Okay. Got that. So let me ask you, if you go back down and you try the second or you resolve the second amended complaint case in the direct action, to get a judgment that's favorable to Expeditors, does that mean that that establishes your ownership of the money in his Wells Fargo account? I don't know, Your Honor. Well, I mean, come on. You filed this case. Well, you're correct. The case has morphed over time. There have been multiple complaints. But the short answer is I would say if we are successful in the direct action, there is a high likelihood that establishing entitlements to the funds in interpleader. And are you saying that it's Expeditors International and not Expeditors Mexico that is the actual owner of the funds? It depends. It depends on what? Well, we believe there has been no discovery and no affirmation and no declaration of any sort of where the funds came from. Our allegation is that the funds are from one of two sources. Either they are funds that were embezzled from Expeditors Mexico or they were funds that were derived from the sale of Expeditors stock that was purchased at a discount during the time the fraud was ongoing. But Expeditors Mexico is a separate entity, is that correct? That's correct. And the only entity here is Expeditors International? That's correct, Your Honor. If the monies at issue are solely monies that were embezzled from Expeditors Mexico, Expeditors Washington does not have a claim to them. But the direct action is going to resolve on remand whether Expeditors International had the right to cancel the stock option exercise. Is that correct? That's one option. And I know there's a separate fidelity account, but what's the tie-in to the embezzlement in the direct action? There is a claim alleged for breach of contract regarding both the stock option agreement and the employee stock purchase plan, which permits employees to purchase discounted Expeditors stock. And the allegation is that those are being breached by Mr. Cadena by virtue of his embezzlement. But does that judgment give you the right to take the – does that situation give you the right to take a judgment in the direct action, go to the district court in the interplea direction and say, ah, this shows that we have the right to those funds in the Wells Fargo account? That's a good question, Your Honor, and it would depend upon what the source of those funds was, which is what we do not know. We don't know where they came from. I look at – you know, you had a claim in a prior version of the direct action. You had a claim for conversion and for a constructive trust over the funds in the Wells Fargo account. And those claims are gone in the second amended complaint. It raises an interesting – it raised an interesting question in my mind whether if those claims had survived, the district court would have abused its discretion in releasing the funds. But those – but those claims are all gone, and all I see in the second amended complaint of the direct action is just a dispute over the trust – I mean, the stock options. Let me – Which, in my mind, when you look at what the district court did, he said the – or whoever it was, I'm sorry – said the account belongs to Cadena. It's his account. There is a presumption of ownership and right to the funds, and you haven't shown me that you have a higher interest in those funds. And so he said under those circumstances, we're not keeping this money. There's no reason to keep this money in the court's registry. It's his. He can get it back. Now, you can sue him and do all you want, and maybe you can get a judgment and levy on his bank accounts and all that kind of stuff, but I don't really see the connection between the two. Let me respond in three ways, Your Honor. Number one, the standard review for the court's distribution of funds is under De Novo. It's not abuse of discretion because it's a Rule 56 standard the court utilized on the distribution of the funds. That's different from the abuse of discretion left in the state. Two different standards. Number two, the district court action – I'll have to think about that. It's in the record, Your Honor, and I believe the court referred to Rule 56. Well, I was referring to the release of the funds. That's why I don't see any abuse of discretion for the reasons that I gave. The order releasing funds is not reviewed under abuse of discretion, Your Honor. Respectfully, it's under De Novo because it's a Rule 56 standard. And why that matters. In the Cadenia direct action, the claims do not just simply resolve the question of stock option agreement and rights to stock options. They also resolve or address whether or not there were violations of those stock option agreements and the employee stock purchase plan such that there was stock derived and funds derived from those during the course of embezzlement to which he has no right. Right, but that relates to a fidelity account. I think in the Second Amendment complaint. No, not necessarily. It could relate to a fidelity account. But the fidelity account is alleged in the Second Amendment complaint, isn't it? In other words, the stock and the funds that are implicated in the direct action refer to a fidelity account in the Second Amendment complaint. We allege that there are funds in that account to the best of our knowledge. And there's no mention of the Wells Fargo account in the Second Amendment complaint. Is that correct? There's no mention of the Wells Fargo account. That's at issue here. I don't recall, but you may be right.  What we don't know respectfully, Your Honor, is what the source of the funds in that account is. And this goes back to my question or my issue about standard review, which is when you're addressing the question whether there should be a distribution on interpleader, there is some sort of evidentiary showing that it must be made. Of a claim, of having some semblance of a claim to those funds. As opposed to just, you know, we think we may prevail and our judgment recovery would be made a lot easier if those funds were frozen for us to be able to recover from that. I think that seemed to be the district court's analysis of this. I think you're right, although the wrinkle to me, Your Honor, is that we weren't the ones who did the first summary judgment. Right? Mr. Cadenia was. And so when he is moving, he has a burden to come forth with some evidentiary showing that he has an entitlement to those funds. Some, right? It's my account. They're my account. Presumption. He said I opened the account. He did not say I deposited the money in the account. He did not say where the money came from. Were the funds in that account? Pardon me? Were the funds in that account? There were money in the account. Yes, there was money in the account. And he opened the account? The only factual representation. And his name is on the account? Yes. And I think that the case law cited does not support the idea that the mere allegation of my name is on the account means the money belongs to me. Can I ask you this? Where is Expeditors Mexico in all of this? Why haven't they filed a claim for conversion to the Wells Fargo account? I don't know what Expeditors Mexico is doing vis-à-vis Mr. Cadenia. I know they have not brought an action here. Is there litigation in Mexico pending? I believe there is a labor proceeding that Mr. Cadenia has brought in Mexico. To the best of my knowledge, that's what's proceeding down there. Because it seems as if it's the wrong party that's trying to assert these issues and there might be a different party that's more appropriate to reaching those funds in the Wells Fargo account. It depends entirely upon what the source of those funds is. Again, if those are the funds that were embezzled from Expeditors Mexico, then you're correct. But if those are funds that came from the acquiring and sale of discounted Expeditors stock when he was in the course of embezzling, I would disagree. I would say then we do have a proper claim to those funds. The challenge here is that we don't know at all the source of the funds. The only thing we know is that Mr. Cadenia says he opened the account. What is the direct relief you are seeking in the second amended complaint? The judgment would say? Sure. We're seeking both declaratory judgment. Which would say? It would say that Mr. Cadenia is not entitled to exercise certain stock options. Got that. That's separate from this. What else would it say? It would also say that there was a breach of contract and there are damages arising from that, and those damages are X dollars. Okay. And the breach of contract claim, Your Honor, Expeditors stock and options acquired, exercised and purchased and then redeemed when he was embezzling. Even if there were damages judgment, it wouldn't create a claim to the interpleader money, would it? Well, Your Honor, I think if the source of the money was from those funds, it would arguably do that. Moreover, the central question to me is if Mr. Cadenia establishes that he owns those funds and those are legitimately acquired, that's the end of the story. That would be the end of the story. But there's no allegation that money in the Wells Fargo account were used to purchase stocks at a reduced rate in violation of a breach of contract, is there? No, there is not an allegation. So at best what you're alleging, I think, is there were funds embezzled by Mr. Cadenia. Some of that was used to purchase stocks at a reduced rate in breach of a contract, and so the Expeditors International suffered damage as a result. But to Judge McEwen's point, that still doesn't connect it to – maybe there's a whole separate set of embezzled funds in Wells Fargo, but what's the connection? If the funds in that account are the product of the stock that was purchased at discount, then I believe we have a claim to those funds. So if he sold it for a gain and the gains were parked in the Wells Fargo account, then you say you would have a claim to those funds?  In a way, it seems to me it's almost like an attachment or some kind of prejudgment attachment would have been more appropriate here, if you're kind of thinking – and I recognize there's various procedural hurdles in prejudgment attachments, but that's what this sounds like to me and not a case that should be sitting here on an interpleader appeal. Why wouldn't that have been a – I mean, I know you're not stuck to one remedy, but this just isn't making sense in the context of the parties with Mexico, with the uncertainty, with the Ninth Circuit appeal. I understand, Your Honor. On the other hand, I'd say that, number one, we didn't initiate the interpleader, Wells Fargo did, and so in some sense we are where we are in terms of the procedural posture. But it didn't preclude you from other avenues. It did not, although there's, to our knowledge, no assets to attach in the United States. It would be difficult for us, I think, to obtain a prejudgment attachment on property in Mexico. What we would submit the Court should do respectfully is to instruct the interpleader funds to be redeposited and to order on remand that either there be discrete discovery to enable the district court to determine the rightful owner of the interpleader funds or a direction that that action be stayed, this action be stayed, until the excavator's direct action is adjudicated. Thank you for your time. Thank you, Mr. Wheeler. May it please the Court. Matt Harrington of Stokes Lawrence on behalf of Armando Cadena. This case is about an unproven cause of action being litigated both in Mexico and here in the United States. Judge King summed it up well in her order at ER 11 when she noted that it would seem, quote, problematic that a company or anyone could contact an individual's bank, allege that that individual embezzled money, prompt the bank to restrain and interplead the funds, and at that point pursue a separate action to prove their entitlement to such funds. Indeed, the law provides other means, as the Court has alluded to, to secure a defendant's assets before judgment where necessary, such as a prejudgment writ of attachment. But instead, Expeditors Washington is here jockeying as a general creditor to get in line for assets that are unrelated to the remaining claims. But that's not appropriate under Step 2 of the interpleader process. That does not allow holders of contingent claims for general liabilities against an account holder to be heard in an interpleader. And Expeditors Washington concededly had no judgment or no lien at that time, at the time the interpleader was filed, and still does not have a judgment today. I think it would be helpful to step back for a moment and get a sense of how this all started. Expeditors Mexico, a non-party, contracted with a third-party company, ASE, that it knew was owned in part by Mr. Cadena, who Expeditors Mexico also employed in its finance department. Expeditors Mexico had agreed to pay a 3 percent surcharge on transactions with ASE, but after a falling out, it cut ties with Mr. Cadena, fired him, and coerced a supposed confession in English from this native Spanish speaker. Mr. Cadena sued Expeditors Mexico in Mexico under Mexican labor law with a substantial claim, which is still pending. Expeditors Mexico's parent then, Expeditors Washington, then orchestrated the two cases here in Washington, including the interpleader that is before the court today. But Expeditors Washington argues no, one of their arguments in their replies, that there's still been no resolution of the ownership of the funds in the Wells Fargo account. Again, that mistakes the test at interpleader step two. It became clear to Judge King below that because of Expeditors Washington's pleadings that Expeditors Washington had no claim to the funds. But not only were those judicial admissions made in the pleadings, but those judicial admissions were also made by counsel in the Rule 56 hearing on disbursement of the funds where counsel confirmed an oral argument that embezzlement allegations related to Expeditors Mexico. That's in the supplemental excerpts of record at six, lines two through 19. What Expeditors Washington is doing here is kind of playing with the word claim or the notion that it might have a claim. Expeditors Washington has, in fact, alleged a cause of action against Mr. Cadena, but that doesn't mean it has a property interest in the funds that used to be in the Wells Fargo account. Expeditors Washington's claim, that is, is not to the res. It is against Mr. Cadena. And that was true at the time that the interpleader was filed, which under this court's precedent in Texaco v. Ponsolt is the relevant time that you have to analyze. Now, if Expeditors were right that you can simply go pursue an interpleader by whispering in the ear of the bank, any litigation would begin with a plaintiff writing letters to banks, which would be really helpful if you're a well-heeled corporation, and then freezing the accounts of your adversary or asking them to interplead the accounts of your adversary. This would force every defendant to essentially prove the source of the funds or to disprove the contingent liability against them in an interpleader, but that is an improper use of the interpleader mechanism. And Expeditors Washington remarkably admits that this is really what their position is in their reply at footnote 1, where they argue that the burden is to show that the source of the funds is not some embezzlement or something like that. They essentially want Mr. Cadena to disprove the contingent claim in the interpleader rather than to simply establish his ownership, his superior ownership in the res. Now, Expeditors doesn't want to pursue the interpleader. At one point, the district court thought that the direct action was going to resolve the ownership question of the Wells Fargo account. What changed or what went into the thinking that that might happen and then, no, it's not going to happen? I don't believe it ever was going to resolve it, Your Honor, so I don't know that I can speculate into initially it was Judge Jones who was considering or was presiding over this interpleader and later Judge King. It's possible that the judges saw it differently. But ultimately, after serial rounds of motions to dismiss and dismissals, I think that the court ultimately started to appreciate the problems here with the standing of Expeditors Washington trying to assert claims on behalf of Expeditors Mexico. And so how would you respond to counsel's argument that, in the nature of their breach of contract claim, if embezzled funds were used and that led to the improper purchase of stocks and the gains from that could have gone into Wells Fargo, that they might have a claim to those monies? I take it your answer is, well, that's still an action against Mr. Cadena, not against the res. It is. It's not unique to any other litigant who's concerned about collections, I suppose. But still, there is no tether here from the claims brought in the direct action to the funds here in the Wells Fargo account. So there still is a live breach of contract claim? There is a live breach of contract claim alleging that breaches by Mr. Cadena would cause him to forfeit his ownership or his right to convert stock options in the Fidelity account. And there's been no answer in that case to the remaining allegations in the complaint? That's correct. We have not answered yet. Not answered that. And so if I understand your position correctly, you're saying, well, it doesn't really matter. With respect to breach of contract, what we should be looking at here is the ownership question. That's right. In the interplea to remember, it was alleged that there was, you know, a $59,000 sum that could be traced to a bank account in Mexico belonging to Mr. Cadena. In the direct action, these claims that have been resurrected really arise out of the stock option agreement between Mr. Cadena and Expeditors Washington having to do with this different account. That account holds Mr. Cadena's exercised stock. That money was granted by Expeditors Washington under the stock option agreement. That is, there can be no tracing to some sort of embezzlement of funds. There's no allegation that the funds in that account originated in Mexico or resulted from the supposed overpriced invoices idea. There's over $1 million there, by the way, I would add. And those funds are frozen beyond Mr. Cadena's reach because Expeditors Washington has control of that account. And as the district court observed, Fidelity is taking their orders from Expeditors Washington. So at least as to that account, Expeditors Washington has successfully engaged in some self-help and has preserved some assets there. As for the assets that were already dispersed appropriately by Judge King, those were completely untethered to any remaining claims in the second amended complaint or otherwise. Put differently, a pending claim for rescission of stock option agreements is not a viable claim to the res of Mr. Cadena's personal savings. Now, in doing so, Judge King, it's worth noting, relied on the judicial admissions of the first two complaints plus the absence of evidence offered by Expeditors Washington on summary judgment. All of that is still true. That has not changed and it will not change. And the Ninth Circuit's order does not disturb those judicial admissions or that absence of evidence provided. And as Judge Pius has observed, the conversion and constructive trust claims are not only gone, in your words, they were dismissed without leave to amend and then there was no appeal from that dismissal so that we regard that as collateral estoppel. There's also, I guess, another way, I mean, put it more directly, there's no allegation in the record that the interpled funds that were in the Wells Fargo account are related to these new claims. I'd like to touch on the summary judgment standard for a moment. The court ordered Expeditors Washington to show cause why it should be entitled to engage in discovery or why discovery was needed. That burden was on Expeditors Washington. And then, of course, when we brought our motion for summary judgment for disbursement of the funds, Expeditors Washington could have advanced a 56D affidavit which says if you can put in an affidavit that identifies specifically what you need, you may be entitled to a delay of summary judgment or otherwise. Expeditors twice declined to do those things, to make this showing. The judge almost was begging Expeditors Washington to put in some evidence. It gave them every opportunity, construed their motion as a 56D or their opposition as a 56D. And it begs the question of why after, at that point, this case has been going on for four years and Expeditors is talking about this scheme and the investigation that they've been engaging in, why not put in some evidence of anything? But instead, the record in this matter on the interpleader review of that 56 has no declaration from anyone at Expeditors Washington or related to them to support the claims or to resist summary judgment. Do you agree that we're reviewing this on de novo review? The 56, yes. Yes, I do. I agree with my friend on the other side that in review of the dispersal order, that was decided on a 56. That's the way interpleader works. And yes, that was... So this is being reviewed de novo. How about the release of the funds? Or the stay, I mean. Oh, the stay would be an abuse of discretion. Right. Yeah, as well as the order on show cause to deny discovery. Which, you know, I guess you could quibble with that order that denied Expeditors Washington the opportunity to pursue discovery, but that came before our motion for summary judgment where they could have submitted a 5060-F, David. My understanding is they were asking for a stay of the release of the funds from the court's registry. There had been a stay in place. Yes. And then Judge King lifted the stay. And then he decided to lift it. Right. That's right. I was going to say, you know, one other thing about choosing to pursue this as an interpleader, I think my friend sort of said, well, you know, there's nothing to pursue a writ of prejudgment attachment down in Mexico. Well, there's these two accounts, both worth over a million dollars here in the United States. They could have pursued a writ of prejudgment attachment against the Wells Fargo account, but the problem is, that writ would put Expeditors Washington to the burden of having to prove the probable validity of the claim and the alleged ground for the attachment to exist. But that's the process endorsed by Judge Kunauer in the case cited by Judge King. That's in the Zadorian case, which from the Central District of California that was reviewed and affirmed by this court. They're trying to use interpleader in short as like a super writ that allows them to get out of the obligations of pursuing a prejudgment writ of attachment. And that becomes even more clear if, I guess, you know, what are we to do here if this court were to reverse? Is the court going to order that the funds be restored to the interpleader account in the court's registry? I guess if that's what they're asking for, that is in no way something that could be accomplished by a prejudgment writ of attachment. You know, a prejudgment writ of attachment, it says, here's an asset. We're going to attach it. It doesn't say, hey, we have a contingent claim against a potential defendant. We're worried about collections. Why don't you take some funds you have somewhere and put it into an account or into the court registry? So, again, that just shows the extreme nature of Expeditors Washington's position here. You know, this is not like further. This is not like a situation where there are insurance proceeds. You know, there's a specific fund that is in dispute, right? We're just talking about a general contingent liability. They haven't identified how much it is. And so, again, the idea that you should restore some inchoate fund that is just beyond what this court ought to do. And I guess my other reaction to that is, you know, I sought a stay of the disbursement pending appeal, but chose not to. And I'm not sure why it did, but, you know, it is hard to understand why we're here seeking to restore funds in a way that I would submit is inappropriate under interpleader procedures. So, in short, Expeditors Washington cannot escape the judicial admissions that Expeditors Mexico is the alleged injured party. They cannot assert an interest premised on a contingent liability that are untethered to the formerly interpleaded funds. And any claims they still have under the Ninth Circuit order are related to a different fund, which is already frozen, and the Ninth Circuit's order does not change Judge King's analysis or rationale. Thank you. I think my time is limited, so I'm going to be very brief. I have six points. Number one, the stay order was imposed by Judge Jones pursuant to report and recommendation by Magistrate Judge Chichita. It was considered, all thought out, and explained itself. Judge King's sua sponte lifted that stay. Her order lifting the stay did not explain what she believed had changed. Number two, the direct action has two different components to it. First, there is a declaratory judgment that is about the validity of an ability to exercise options. Those are not options exercised. That's the question, that's the dispute. The second piece has to do with options that have already been exercised and stock that's already been purchased. And the funds from those things, certainly some may be in fidelity. We don't know where they are. We don't have knowledge. Number three, there's no case we're aware of where an interpleader is resolved in favor of a party that has not shown, demonstrated rightful ownership. Number four, the presumption of ownership argued none of the cases that are cited by Mr. Kidania's counsel satisfy or are opposite to the facts here. They are all entirely disparate. Number five, the district court prohibited discovery, told us we couldn't do discovery, and did so before they filed summary judgment. Number six, on summary judgment, the movement has the burden. The facts and inferences are construed against the movement. And the only fact put forward by Mr. Kidania in his motion of redistribution under Rule 56 was the assertion, I opened the account. That's it, nothing else. Thank you for your time. Thank you, counsel. Thank you both for your helpful arguments. The matter will stand submitted and court is adjourned. All rise.
judges: McKEOWN, PAEZ, SANCHEZ